UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY ALLEN REID, | |
| Petitioner, | CIVIL ACTION NO. 1:23-cv-00974 |
| v. | (SAPORITO, J.) |
| BOBBI JO SALAMON, | |
| Respondent. | |

MEMORANDUM

Jeffrey Allen Reid, incarcerated at SCI-Dallas[1] in Dallas, Pennsylvania, proceeds on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Finding that the record does not entitle him to habeas relief, the Court will dismiss the petition.

I. STATEMENT OF THE CASE

On March 10, 2016, in the Court of Common Pleas of York County, a jury found Reid guilty of seven felony charges[2] arising from a murder

---

[1] Reid initially filed this petition from SCI-Rockview, but that prison is closing, see https://www.pa.gov/agencies/cor/about-us/newsroom/newsroom/padoc-announces-final-decision-to-close-sci-rockview-and-quehann (last visited Nov. 7, 2025), and the Court's review indicates that he has been moved to SCI-Dallas.

[2] Reid was convicted of first-degree murder, second-degree murder,
*(continued on next page)*

and a series of attempted robberies on July 19, 2014. Reid was sentenced to life imprisonment without the possibility of parole. As described by the Pennsylvania Superior Court on direct appeal, the facts of the case are as follows:

> Seeking money to get out of town, Appellant embarked on a series of three botched robberies with his girlfriend and several other co-conspirators. When these proved unsuccessful, Appellant decided to call a friend, Dashaun Davis, and ask him to come over, to rob him, knowing that he usually had money.
>
> When Davis arrived, Appellant's cohort, NaQuan Coakley, tried to rob him at gunpoint. Appellant was nearby. Davis reached for the revolver. Coakley fired, several times. While this was happening, Davis called out to Appellant by his street name, "Sincere." Appellant told Coakley to "finish him" or "off him."
>
> Appellant asked the other robbers for help in disposing of Davis' body, but they refused. By this time they heard the sound of sirens coming from police cars responding to reports of shots fired. Everybody scattered.
>
> Later, in prison, Appellant was housed with cellmate Andrew Horn. Appellant asked Horn to write to his (Appellant's) attorney claiming that Coakley had told him that he shot Davis, and Appellant was not involved. Horn wrote a letter, but did not send it. Instead, Horn became a prosecution witness at trial.
>
> Horn testified, *inter alia*, that Appellant told him that

---

prohibited possession of a firearm, robbery, conspiracy to commit robbery, and two counts of criminal attempt to commit robbery. *See* (Doc. 13-1 at 8-9).

> he gave the order to Coakley to finish off the victim, Davis. Another co-conspirator, Malik Williams, (Coakley's younger brother), also testified against Appellant.

*Commonwealth v. Reid*, No. 1194 MDA 2016, 2017 WL 3189261, at *1 (Pa. Super. Ct. July 27, 2017) (record citations omitted).

### A. Procedural History

Reid appealed his conviction on July 18, 2016. His brief on appeal argued that the evidence was not sufficient to support convictions of first-degree or second-degree murder, and that the trial court abused its discretion in denying a motion for mistrial because of the police's failure to produce cell phone records. *See* (Doc. 13-1 at 374-397). On July 27, 2017, the Superior Court affirmed his conviction. *See Reid*, No. 1194 MDA 2016, 2017 WL 3189261. Reid did not seek review in the Pennsylvania Supreme Court.

Reid filed a Post-Conviction Relief Act ("PCRA") petition on June 12, 2018. Reid argued that trial counsel was ineffective for (1) failing to timely seek the phone records of the victim, (2) failing to introduce the phone records counsel obtained after trial, and (3) failing to object when the Commonwealth presented the testimony of Malik Williams, which

the Commonwealth knew to be false.[3] Following an evidentiary hearing, the petition was denied on February 5, 2021. (Doc. 13-1 at 520-527). Reid appealed, and the Superior Court affirmed on February 14, 2022. *See Commonwealth v. Reid*, 273 A.3d 1050 (Pa. Super. Ct. 2022). Reid filed a Petition for Allowance of Appeal in the Pennsylvania Supreme Court, which was denied on December 27, 2022. *Commonwealth v. Reid*, 289 A.3d 892 (Pa. 2022). Reid then filed his petition in this Court, pursuant to 28 U.S.C. § 2254, on June 13, 2023.

### B. Habeas Claims Presented

In the instant petition, Reid asserts three grounds for relief:

- (1) Trial counsel was ineffective for "failing to seek the phone records of the victim";

- (2) Trial counsel was ineffective for "failing to introduce phone records obtained after trial"; and

- (3) The trial court "abused its discretion by denying a mistrial for a *Brady* violation" created by the testimony of Malik Williams.

---

[3] Although Reid raised other issues in the PCRA petition, Reid, through counsel, ultimately chose to proceed only on the three ineffective assistance of counsel claims. *See* (PCRA Tr. 2:11-4:9).

## II. LEGAL STANDARDS

A federal court may not grant relief on habeas claims previously adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d). In drafting this statute, Congress "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." *Williams v. Taylor*, 529 U.S. 362, 386 (2000); *see also Eley v. Erickson*, 712 F.3d 837, 846 (3d. Cir. 2013). Consequently, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams*, 529 U.S. at 387. "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be

[objectively] unreasonable." *Id.* at 411; *see also Eley*, 712 F.3d at 846. Moreover, any factual findings by the state trial and appellate courts are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013); *Eley*, 712 F.3d at 846.

Subject to limited exceptions, the petitioner must first exhaust all claims in state court. *See* 28 U.S.C. § 2254(b),(c). A state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A claim has been exhausted when it has been "fairly presented" to the state court, meaning that the court has addressed it on the merits. *Picard v. Connor*, 404 U.S. 270, 275 (1971). The petitioner bears the burden of proving exhaustion of all available state remedies. *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005) (citing *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993)).

### III. DISCUSSION

#### A. Failure to Investigate/Present Phone Records (Grounds 1 and 2)

Reid argues that trial counsel was ineffective for failing to obtain

the victim's phone records prior to trial (Ground 1). For an ineffective assistance claim, a petitioner must prove "(1) that his counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced" the client, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688-89, 694 (1984). Reid's ineffective assistance claims were exhausted through his PCRA appeal, and the Superior Court[4] rejected the claims on the following basis:

> The parties first learned on January 21, 2016, 46 days before trial, that a member of Appellant's group used text messages to lure Victim. Appellant's counsel did not request Victim's phone record before trial. Instead, counsel first sent a subpoena to Victim's cell phone carrier to obtain the record after trial.
>
> In response, Victim's carrier sent counsel a record "more akin to a phone bill than a phone record" that "did not prove the absence of messages to [Victim] on the night of the murder because the bill did not include text messaging information." The carrier did not retain text message content as a matter of course and was, therefore, "unable to go back and get actual printouts of

---

[4] The Superior Court's opinion is the "last reasoned" state-court decision addressing Reid's ineffective assistance claims. *See Laird v. Sec'y, Pennsylvania Dep't of Corr.*, 129 F.4th 227, 243 (3d Cir. 2025).

> text messages from 2014[.]" The PCRA court explained that, since the record did not disprove the Commonwealth's theory that someone in Appellant's group lured Victim using text messages, Appellant failed to prove that the record's absence changed the outcome of trial.
>
> We agree. Appellant's cell phone record lists only incoming and outgoing calls and does not indicate whether Victim sent or received text messages. Thus, this record does not impugn the Commonwealth's theory of criminal liability and would not have changed the outcome of trial. Additionally, and critically, Appellant has presented no evidence to prove that he would have received any more useful documentation had counsel requested Victim's cell phone record immediately upon learning of its potential importance rather than approximately three months later.

*Reid*, 2022 WL 439122, at *2-3 (record citations omitted).

Although the meaning of the phone records could be subject to interpretation, Reid has not shown that the court's findings were unreasonable, or that they would have affected the outcome of the trial. The records themselves, which are labeled "Call Records," do not appear to contain any information about text messages. *See* (Doc. 13-1 at 404-410). On direct appeal, Reid's counsel had argued that these records "showed that Dashaun Davis did not receive any text messages from any unknown numbers [including Reid's] the night he was murdered." *See* (*id.* at 395, 415). At the PCRA hearing, counsel clarified that "no records

- 8 -

I ever received had any indication of text messaging," but that he believed the absence of such an indication proved that "the only messaging, phone call message, whatever it was that went to Mr. Davis's phone" did not come from Reid. (PCRA Tr. 13:10-15, 16:21-25). Thus, there is ambiguity as to whether the records *showed* that Reid did not text Davis, or whether, as the PCRA court found, the records "*[did] not indicate* whether [Davis] sent or received text messages" (emphasis added). Given the ambiguous evidence presented, and the deference afforded to state courts' factual findings, *see* 28 U.S.C. § 2254(e)(1), the Court cannot find that the PCRA court's interpretation was unreasonable.

Moreover, even the most favorable interpretation of the phone records would not create a viable ineffective assistance claim for Reid, because the text messages were not essential to his conviction. Although Reid's trial counsel argued that the text messages were relevant to whether the murder was premeditated, the prosecution never argued that Reid texted Davis for the ultimate purpose of killing him. Contrary to Reid's present claim that evidence of his participation was limited to "the luring of the victim to the scene of the crime," the prosecution relied on testimony that at the scene, Reid directed Coakley to "finish [Davis]"

or "off him," and that Coakley shot Davis in the head, as evidence of premeditation sufficient for first-degree murder on a theory of accomplice liability.[5] Thus, it was reasonable to conclude that the absence of text message evidence did not change the outcome of the trial.

To the extent Reid's assertion of prejudice stems from the inability to impeach the credibility of witness Andrew Horn, that argument is also unavailing. Horn testified that Reid told him he planned to "set up" Davis by contacting Davis "through messaging." Even if phone records established that Reid did not text Davis, Horn never claimed first-hand knowledge of Reid's text messages; he was testifying to what Reid had told him after the murder. Nor was it clear that the "messaging" referred to text messaging as opposed to some other application. *See* (Trial Tr. 259:11-260:1). Thus, evidence that Reid did not text Davis would not have clearly shown that Horn was lying, and any attempted impeachment on

---

[5] *See* (Trial Tr. 81:9-16; 390:17-25 ("He directs Naquan Coakley to finish him, which he does, shoots him in the head. Ladies and gentlemen, that's textbook first degree murder. You shoot someone in the head, you know they are going to die, and that was done at the direction of Jeff Reid.")); *see also Commonwealth v. Simpson*, 562 Pa. 255, 265 (2000) ("It is the specific intent to kill which distinguishes murder in the first degree from lesser grades of murder," which can be established by "the use of a deadly weapon on a vital part of a human body.").

that basis would not have changed the outcome. Moreover, since the content of the texts was unavailable[6], there would have been no further opportunity to contradict any other aspects of Horn's story. *See Reid*, 2017 WL 3189261, at *4 ("Absent an indication of content, the claim that such evidence would be exculpatory or useful for impeachment is no more than speculation and conjecture."). Reid argues that "it was incumbent on counsel to determine if relevant records existed," but he does not identify any other "relevant records" ascertainable in January 2016 that would have changed the outcome.[7]

---

[6] Neither Reid's phone nor Davis's phone was recovered from the scene. *See* (Trial Tr. 262:1-6, 400:6-22). At the PCRA hearing, Reid's counsel testified that by the time he learned of the relevance of the text messages in 2016, he would have been "unable to go back and get actual printouts of text messages from 2014," based on information provided to him when he subpoenaed the phone records after trial. *See* (PCRA Tr. 13:10-25).

[7] To the extent Reid contends that his counsel was aware of the potential need for phone records prior to January 21, 2016 (and thus could have obtained more complete records), he has not shown that the PCRA court's contrary finding was unreasonable. At the PCRA hearing, Reid testified that "from the beginning," he "asked [counsel] several times to investigate cellphone records . . . to show that I never set up the victim to come to there, that I didn't know the victim." However, Reid testified that he became aware of the potential relevance of the text messages "when I read my discovery," which was sometime in February or March 2016. (PCRA Tr. 7:25-8:21; 16:6-20).

In Ground 2, Reid alleges that trial counsel was ineffective for "failing to introduce the phone records . . . after trial." Although he essentially restates his argument about counsel's alleged failures prior to trial, the Court interprets Reid to argue that counsel was ineffective for failing to move for a new trial based on the phone carrier records he obtained after trial. *See* (Doc. 7 at 10) ("Counsel was then permitted a second opportunity for a new trial which the court permitted counsel to do following the verdict."). However, the record reflects that counsel did request a new trial in post-sentence motions based on the later-obtained records. *See* (Doc. 13-1 at 393-396). Moreover, as described above, the records would not sustain any kind of ineffective assistance claim because they would not have changed the outcome of trial.

### B. Abuse of Discretion (Ground 3)

In Ground 3, Reid asserts that the trial court abused its discretion when it denied a mistrial for an alleged *Brady* violation created by Malik Williams's testimony. *See* (Doc. 7 at 11). Reid argues that the prosecution knowingly permitted Williams to "make false[] statements that [Reid] shot and killed the victim." However, Reid's trial counsel never requested a mistrial on this ground, and Reid has not presented this argument to

the state courts. While Reid addressed Williams's testimony in his prior ineffective assistance claims, he has not exhausted the claim that the trial court abused its discretion by refusing to grant a mistrial for Williams's testimony.[8] Reid has not shown, or attempted to show, an appropriate basis for his failure to exhaust this claim, so it cannot be considered. Moreover, Reid was charged on theories of conspiracy and accomplice liability, so the question of who shot Davis would not have affected the verdict. *See* (Trial Tr. 79:14-80:12; 393:16-395:8); *Shinn v. Ramirez*, 596 U.S. 366, 379 (2022) (petitioner must show cause for procedural default and actual prejudice from the alleged violation).

## IV.  CONCLUSION

Accordingly, the Court will dismiss Reid's petition. Because Reid has not demonstrated "a substantial showing of the denial of a

---

[8] Rather than requesting a mistrial, Reid's counsel opted to cross-examine Williams based on his inconsistent statements. *See* (PCRA Tr. 25:20-26:14); *Reid*, 2022 WL 439122, at *3. The PCRA court was not compelled to consider whether it would have been an abuse of discretion to deny a mistrial. Thus, there is no plausible argument that Reid's ineffective assistance claim presented the "factual and legal substance" of his abuse of discretion claim to the state courts. *See Willis v. Vaughn*, 48 F. App'x 402, 406 (3d Cir. 2002) ("[I]neffective assistance of counsel claims and underlying due process claims are distinct, and exhaustion of one does not constitute exhaustion of the other.").

constitutional right," 28 U.S.C. § 2253(c)(2), no certificate of appealability will issue. *See Buck v. Davis*, 580 U.S. 100, 115 (2017). An appropriate order follows.

Dated: November 12, 2025        *s/Joseph F. Saporito, Jr.*
　　　　　　　　　　　　　　　　JOSEPH F. SAPORITO, JR.
　　　　　　　　　　　　　　　　United States District Judge